State v. Phillips & Ross.

THE STATE, Respondent, v. PHILLIPS & ROSS, Appellants.

1. Under the revised code of 1855, where two defendants, jointly indicted, elect to be tried together, they are not entitled to a panel of more than thirty-six jurors.

2. A., B. and C. were jointly indicted for the murder of one D.—A. as principal in the first degree, B. and C. as aiders and abettors; A. was put upon his trial first and was acquitted: *held*, that as against B. and C. the question of the guilt or innocence of A. was still open; that his acquittal did not operate their discharge; that, though A. was the actual perpetrator of the homicide, the record of his acquittal would be inadmissible in evidence in favor of B. and C.

3. The proceedings upon an application for a change of venue in a criminal case, and the order of the court granting the same, are inadmissible in evidence against the accused.

4. Where evidence introduced is competent as against one of two defendants and incompetent as against the other, the party as against whom it is in competent should, on the failure of the court of its own motion to instruct the jury as to its application and effect, move the court so to instruct; if the court refuse to grant such motion, it is error; if no such motion be made, there is no error.

5. The interval between the perpetration of a homicide and the flight of the perpetrator may be so short that there can arise no well grounded apprehension of personal violence: in such case evidence of excitement existing at the time of the arrest is incompetent, and may be properly ruled out when offered to repel any presumption of guilt arising from the fact of the flight.

6. Where the defence, for the purpose of discrediting a witness for the prosecution, causes to be read certain portions of depositions of such witness taken before the coroner on the inquest and before the committing magistrate, the prosecution may then read the whole of such depositions.

7. A., B. and C. were jointly indicted for the murder of D.—A. as principal in the first degree, the actual perpetrator—B. and C. as aiders and abettors. A. was put upon his trial first and acquitted; upon the trial of B. and C. the court, after instructing the jury as to the law of murder in the first degree, gave the following instruction: "If the jury believe from the evidence that A. wilfully shot and killed the deceased without premedita-

tion or without the intention to consummate by his act the death of the deceased, and that B. and C. were then and there present aiding, abetting and assisting A. to do the aforesaid act, without premeditation or malice aforethought on their part, then you will find the defendants guilty of murder in the second degree, and assess their punishment," &c. *Held*, that this instruction was misleading and erroneous.

*Appeal from Madison Circuit Court.*

The facts are stated with sufficient fullness in the opinion of the court.

*U. Wright*, for appellant.

I. The venire was not a legal body, being deficient in number. (R. C. 1845, p. 878–9, secs. 34 and 35 of art. 6 of act regulating the practice and proceedings in criminal cases.) By the common law each defendant on a joint trial is entitled to the full number of his challenges. (2 Hale P. C. 263–8; 2 Hawk. P. C. ch. 41, § 9; Co. Litt. 156; United States v. Marchant, 12 Wheat. 580; Concklin's treatise, 654; 1 Chitt. C. L. 536; 6 Ohio, 87.) Our statute gives this right.

II. The acquittal of Sullivan Phillips, the principal in law and fact, operated in law a discharge of the defendants from the indictment; and the court ought to have discharged them on the motion. It is granted that the acquittal of one *charged* as principal does not *necessarily* discharge those *charged* as aiders and abettors. It may be that though charged as principal he was acquitted because he did not do the deed, and in fact had no knowledge of the transaction. It is granted also that one charged as principal may be found guilty as aiding and abetting, and vice versa. There would not be a variance in such case. But there can be no *aider and abettor* without a *guilty principal*. The acquittal of Sullivan Phillips, who killed Robert G. Watson, made it impossible that either of the defendants could criminally *aid and abet* in that act. No man can be charged criminally with aiding and abetting any act in itself lawful. (See Hunt v. Simonds, 19 Mo. 583; R. C. 1845, p. 397, secs. 17 & 18.) Though the aider and abettor—or accessory

State v. Phillips & Ross.

at the fact—is called a principal in the second degree, and though his offence is punished as is that of the principal in the first degree, yet his guilt is *dependent* crime as essentially as that of the accessory before or after the fact. Without a guilty principal there can be no guilty accessory at the fact. The aider and abettor becomes a principal by making the act of the principal his own act. The analogy is perfect between the derivative guilt of accessories before and after the fact, and the dependent guilt of the aider and abettor. As the acquittal of the principal discharges accessories both before and after the fact because the guilt of each hangs on the guilt of the principal, so the acquittal of the principal in the first degree, (I mean the acquittal of the principal in fact—the real party who did the deed—not he who is merely charged as such,) for the same reason operates a discharge of the principal in the second degree. (See 1 Chitt. C. L. 256 ; 1 Hale P. C. 438–9 ; Foster, 349 ; Archb. C. P. 4; 2 Waterman's Archb. 249 ; 2 Hale, 223 ; 1 Leach, 360 ; 1 Wood. & Min. 231 ; 8 Carr. & Payne, 616 : Wallis' case, 3 Salk. 334; Rex v. Taylor & Shaw, 1 Leach, 398; Benson v. Offley & Lippon, 2 Show. 510 ; 3 Mod. 121; 3 Salk. 38 ; Rex v. Towle, Badder & Slater, Russ. & Ry. 314 ; 3 Price, 145 ; 1 Price Exch. 329.)

III. If any technical principle was in the way of the discharge on motion, the result was clearly attainable in the other mode adopted. The offer to introduce the record and proceedings of the trial and acquittal of the principal, Sullivan Phillips, had upon the the indictment in this cause, with additional and explanatory facts, was improperly rejected. In this country and in England the record of the conviction of the principal is legal evidence on the trial of the accessory before and after the fact. Foster C. L. 365; 2 Starkie Ev. 7 ; United States v. Wood, 3 Wheeler's cases, 325 ; Smith's case, 1 Leach, 288 ; Rosc. C. E. 174 ; 10 Pick. 477 ; 2 Bailey, 66 ; 2 Stalk. Co. 237.) So it is competent for the prosecution on a trial of a principal in the second degree to introduce the record of the conviction of the principal in the first degree. (Wharton on Hom. 162 ;

Wharton's C. L. 119 ; 7 Georgia, 2 ; Wallis' case, 3 Salk. 334.) So long as the doctrine is maintained by this court that parties jointly indicted, though tried separately, are not evidence for or against each other, it is manifest that the conviction or acquittal of the principal can not be wholly *res inter alios acta*. It is only because they are parties to the record that the incompetency arises. The record of conviction is held not to be conclusive of the guilt of the principal. The reason is that the accessory is a party to the record, and by his relation must stand or fall with his principal ; yet he has not had control of the trial of his principal — for that purpose he has had no day in court. He may traverse the finding, but the onus is upon him. The record of *acquittal* of the principal must however on every ground of authority be conclusive against the State.

IV. It was error to permit the State to read to the jury the application for a change of venue from New Madrid county, and the affidavits of defendants in support of it.

V. The court erred in permitting Edmund Shelton to detail, as against Ross, what passed between himself and Presley Phillips touching the discharge of the witness as overseer of Phillips, and the reasons therefor, a month or more before the homicide and in the absence of Ross ; also what passed between witness and said Presley on the Monday before the homicide, neither Ross nor Sullivan Phillips being present.

VI. The court rejected proper evidence offered to rebut any presumption of guilt arising from the flight. A man may fly from *anticipated* violence, and he may show the *subsequent* excitement to justify the anticipation.

VII. It was manifest error to permit the State to read in rebuttal the whole of the evidence of Shultz taken before the coroner and magistrate. The extent of the right was to read such portions of each document, and only such as explained, modified, or qualified that portion of the witness' evidence which had been read by the defence, if such there were.

VIII. The instructions contained error. By the instruction

touching murder in the second degree, murder is declared possible without malice aforethought.

*H. A. Clover*, (circuit attorney,) and *J. W. Noell*, for the State, cited Wharton on Hom. 160 ; State v. Fley, 2 Brevard, 338 ; The State v. Posey, 4 Strob. 127 ; Rex v. Taylor, 1 Leach, 398 ; Benson v. Offley, 2 Show. 570 ; 3 Mod. 121 ; Rex v. Wallis, Salk. 334 ; 3 Price, 145 ; 2 Marsh. 465 ; Archb. C. P. 6 ; 1 East. P. C. 351 ; 1 Hale, 437, 615 ; Plowd. 100 *a.* ; Rex v. Home, 1 Leach, 473 : State v. Mair, 1 Coxe, 453 ; Foster, 551 ; Rex v. Borthwick, Dougl. 207 ; Rasinck's case, 2 Virg. Ca. 356 ; Huffman v. Commonwealth, 9 Rand. 685 : Rex v. Royce, 4 Burr, 207 ; 3 T. R. 105 ; Coalheavers' case, 1 Leach, 76 ; Regina v. Tyler & Price, 8 Carr. & Pay. 616.

SCOTT, Judge, delivered the opinion of the court.

The first point made in this case is, that the venire was not a legal body, being deficient in number. The indictment was for murder, and was preferred on the 15th day of January, 1856. The defendants elected to be tried separately ; and, under the supposition that such would be the case, a venire for thirty-six jurors was issued and returned. Afterwards the defendants elected to be tried jointly, and the panel previously returned in the cause was offered to be used, when the defendants objected, claiming that they were entitled to a panel of fifty-six jurors. This claim was disallowed by the court and the defendants excepted. The counsel for the accused relied on the provisions of the code of 1845, in support of their exception. In this we are of opinion that they are in error. As has been stated, the indictment was found in January, 1856, and the trial took place at the September term following. In the interval the code of 1855 took effect, viz., on the 1st May, 1856. The 16th section of the act entitled " An act concerning the revised statutes," approved December 6th, 1855, provides that " no action, plea, prosecution, civil or criminal, pending at the time any

statutory provision shall be repealed, shall be affected by such repeal, but the same shall proceed, in all respects, as if such statutory provisions had not been repealed, except that all such proceedings had after the taking effect of the revised statutes shall be conducted according to the provisions of such statute, and shall be in all respects subject to the provisions thereof, so far as they are applicable." Now the fifth section of the sixth article of the act entitled " An act to regulate proceedings in criminal cases," approved December 8th, 1855, provides that " when several defendants are tried together, they shall join in their challenges." The defendants then having elected to be tried jointly, a panel of thirty-six jurors was all to which they were entitled.

The second point made by the accused is that the acquittal of Sullivan Phillips, the principal in the first degree, operated in law the discharge of the defendants from the indictment, and the court ought to have discharged them on motion. In order fully to comprehend this point, it may be necessary to premise that Sullivan Phillips, Presley Phillips and John L. Ross were jointly indicted for the murder of Robert G. Watson. Sullivan Phillips was charged as principal in the first degree, or as the actual perpetrator of the deed, and Presley Phillips and John L. Ross were charged as being present aiding and abetting in the commission of the crime. Sullivan Phillips was put upon his trial and acquitted. It appeared from the evidence on the trial that he actually fired the gun by whose shot Watson was killed. Afterwards Presley Phillips and J. L. Ross, who were charged as aiders and abettors, were put upon their trial, and, producing the record of the acquittal of Sullivan Phillips, they claimed their discharge. This motion was overruled, and the action of the court thereon is now to be reviewed. The question was raised in two ways on the trial below, once by a motion for a discharge before any evidence was heard in the cause, and afterwards by an offer of the record of the acquittal of Sullivan Phillips as evidence in chief, accompanied with explanatory facts. The same principle is involved in both the forms adopt-

ed, and it will not be necessary to advert to any difference caused by the mode of presenting the question. In Chitty's Criminal Law, 256, it is said " a man may be principal in one of two degrees. A principal in the first degree is he that is the actor or actual perpetrator of the crime, and in the second degree, he who is present aiding and abetting the fact to be committed. Principals in the second degree were formerly denominated and regarded as accessories at the fact. And it seems that he who actually committed the crime was alone guilty as principal, and those who were present aiding and assisting were but in the nature of accessories, and could not be put upon their trial until the principal was first convicted. This distinction has however been long since exploded, and now the stroke is constructively given by all who consent and who are present at its infliction; and they may be put upon their trial though the actual slayer is neither outlawed nor found guilty. In order, however, to make the aiders and abettors thus highly culpable, they must be present, aiding and assisting to the felony with a felonious intent. In an indictment for murder, if several be charged as principals, one as principal perpetrator, and the others as aiding and abetting, it is not material which of them be charged as principal in the first degree as having given the mortal blow; for the mortal injury given by any one of those present is in contemplation of law the injury of each and every one of them. If the actual perpetrator of a murder should escape by flight, or die, those present abetting the commission of the crime may be indicted as principals; and though the indictment should state the mortal injury was committed by him who is absent or dead, yet if it be substantially alleged that those who were indicted were present at the perpetration of the crime and did kill and murder the deceased by the mortal injury so done by the actual perpetrator, it shall be sufficient." These are well established principles of the criminal law, and it would seem to follow as a corollary from them, that there is no distinction between a principal in the first degree and a principal in the second degree. They are both equally guilty of

the same offence if they are guilty at all. There is no accessorial or defendant guilt between them. They stand and are to be regarded as though both were indicted as principals in the first degree. What advantage then can a principal in the second degree derive from the acquittal of a principal in the first degree ? If two are jointly indicted for a felony, and they elect to be tried separately, if he that is first tried should be acquitted, what benefit can the other derive from the verdict and judgment ? This is an analagous case. The error of the proposition of the defendants' counsel that the acquittal of Sullivan Phillips, the principal in law and fact, operated in law the discharge of the defendants, consists in the assumption of the fact of the acquittal of S. Phillips, or, perhaps it would be more perspicuous to say, in the appropriation of the fact of his acquittal to their benefit. If Sullivan Phillips did kill Watson, and if the killing was lawful or excusable, it is clear that those who assisted him are guilty of no crime. But in such case the abettor, on his own trial, must establish the innocence of the actual perpetrator of the deed by other evidence than a verdict of his acquittal. The acquittal of him who actually did the deed, as between him and the State, is final and conclusive. But by what right do the abettors appropriate to themselves the benenfit of that acquittal as evidence in their behalf ? As to them it is *res inter alios acta*. Had the actual perpetrator been convicted, the abettors would not have been affected by it; nor can they derive any advantage from his acquittal. On the trial of the defendants, the sole inquiry is not whether they assisted S. Phillips, but whether, in the intendment of law, they are guilty of the murder of Watson ; and the jury who tries them weighs the conduct of S. Phillips as an actor in the scene, and though he may have been acquitted, yet his acquittal enures solely to his own benefit, and will not affect the question of the guilt or innocence of those then on trial, which will be determined uninfluenced by the verdict rendered for or against any other party to the indictment. The office of that verdict is fully discharged as long as it protects Sullivan Phillips from a

subsequent trial, and can impart no aid to others joined in the same indictment, who must undergo their trial and show their innocence without any assistance derived from a verdict to which they were not parties. The authorities cited do not support the proposition that it is competent for the prosecution on the trial of a principal in the second degree to introduce the record of the conviction of the principal in the first degree. The case mostly relied on for this is that of Studsill v. The State, 7 Georgia, 2. The law of this case is by the same court expressly denied in the. case of Armstead v. The State, 18 Georgia, 707. The only authority Wharton, in his work on criminal law, cites in support of this doctrine, is that of Studsill — the authority of which we have seen was subsequently denied. The case of Wallis, 1 Salk. 334, shows that if the record of acquittal was in evidence (and how it was does not appear) it availed nothing. For Lord Holt ruled that though the indictment be against the prisoner for aiding A., who was acquitted, yet the indictment and trial of this prisoner is well enough, for who actually did the murder is not material; the matter is that the murder was committed, and the other is but a circumstance, and all are principals in this case; therefore if the murder be proved it is well enough.

We do not consider that the case of Regina v. Tyler, 8 Car. & Payne, 616, is at variance with the rules of law as above stated. It only decides that where a person of unsound mind is the actual perpetrator of the homicide, others can not be charged as aiders and abettors. In that case there were two counts in the indictment. In one of them the prisoner was charged as principal in the first degree; in the other as principal in the second degree; and the actual perpetrator of the crime being a madman, and the prisoner being apprised of his ill-intentions, the jury was directed to find him guilty under the count in which he was charged as principal in the first degree.

We see no warrant in the law for reading, against the protest of the accused, the proceedings on the application for the change of venue and the order thereupon. Whether there was

a change of venue or not, or whether it was properly awarded or not, was a question with which the jury had nothing to do; and it is surprising that, against the objection of the accused, the attorney for the State should have done such a thing. What motive could there be to such an act but the hope of reproducing that very state of things from which the law in its mercy had rescued the defendants? It was making the law guilty of the absurdity of awarding a change of venue, and at the same time depriving the party of the advantage expected from it—a fair and impartial trial.

The next point made in the cause is, that the court erred in permitting Edmund Shelton to detail (as against Ross) what passed between himself and Presley Phillips touching the discharge of the witness as overseer of Phillips; also in suffering to go to the jury, as evidence against Ross, the conversation testified to by the same witness between himself and Presley Phillips on the Monday preceding the fatal occurrence. It is usual for courts, when evidence proper in itself is given, but which is incompetent against one party or for certain purposes, to explain at the time to the jury the proper application and effect of the evidence received. If the court fail to do this voluntarily, the party should move a direction to the jury as to its application and effect, and on the refusal of the court to give such direction, should except. But if he fail to do this, as the evidence was competent for some purposes or against some of the parties, it is obvious that no assignment of error can be based upon its admission. In such cases, as the evidence is strictly admissible, this court has not relieved a party against whom it may have been prejudicial when he has failed to ask a direction as to its application and effect. This has been the constant practice.

Further complaint is made that the court rejected proper evidence offered by the defendants, to rebut any presumption of guilt arising from their flight. Upon an examination of the record, we are not prepared to say that there was any error in the court below in rejecting evidence in relation to the flight of

the defendants. It appears that they fled before there was any demonstration of excitement against them. If their flight had been occasioned by a fear of popular excitement already existing, they might have shown the existence of such excitement as a reason for their evasion ; the continuance of that excitement after their arrest might also have been shown as an evidence of its strength. But if the defendants fled before there was any demonstration of public excitement against them, it can not be said that their flight was caused by a state of things which did not exist until it had already taken place. No doubt a man may fly from anticipated violence, and he may show the subsequent excitement to justify the anticipation. But the interval between the doing of the deed and the flight may be so short that there can not arise a well grounded apprehension of personal violence, especially as the defence assumes that the act was done suddenly and without premeditation. Unless the conscience itself gave the alarm under such circumstances, it would be difficult to account for the flight. If it was induced by the advice of others, it may be shown.

Another alleged error of which complaint is made is, that the court permitted the State to read in rebuttal the whole of the evidence of the witness Shultz taken before the coroner and magistrate. Shultz, it appears, was examined as a witness for the State. The defendants afterwards, for the purpose of discrediting the witness, read portions of his depositions taken before the magistrate and coroner. The State then read the whole of these depositions. We see no error in this course. As the defendants read parts of the depositions with a view to contradict the witness, the prosecution was entitled to read the whole of them, in order to show his consistency. (Harrison v. Rowan, 3 Wash. C. C. 580 ; Temperly v. Scott, 5 Car. & Payne, 341 ; Cow. & Hill's notes, 934–5.)

It is next objected that erroneous instructions were given to the jury. After instructing as to what constitutes murder in the first degree, the jury were told that "if they believe from the evidence that Sullivan Phillips wilfully shot and killed the

deceased without premeditation, or without the intention to consummate by his act the death of the deceased, and that Presley Phillips and John L. Ross were then and there present aiding, abetting, and assisting Sullivan to do the aforesaid act, without premeditation or malice aforethought on their part, then you will find the defendants guilty of murder in the second degree.''

Our act of assembly provides that '' every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary, or other felony, shall be deemed murder in the first degree ; and that all other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree.'' It has been a matter of some difficulty to ascertain the object and design of this provision. It is plain that it was intended to affect some change in the law in regard to the crime of murder as it stood at common law. By that law wilful and intentional murders and constructive murders, or murders where the law implied malice and there was no intent to kill, were of the same grade. These offences, however different in enormity, were subject to the same punishment. He who shot at a fowl with a felonious intent, and thereby accidentally killed a man, was punished in the same manner as he who took away his neighbor's life by poison or by lying in wait. No doubt it was the intention to make all murders, where malice was only implied, and where there was no intention to effect death, murders in the second degree, which were subjected to a milder punishment than murder in the first degree ; and it is no argument against this conclusion, that the same statute has made some constructive murders manslaughter in some one of its degrees ; for, notwithstanding these provisions, cases may arise which would not be covered by them. The question is, have the provisions respecting murder in the first and second degrees gone further and made any murder, which by the common law was wilful or intentional, only murder in the second degree,

unless deliberation or premeditation be shown to have existed? It is well known that our statute on the subject of murder in the first and second degrees is a transcript of that prevailing in the state of Pennsylvania. As the interpretation which that statute had received was well understood at the time of its adoption into our code, we may reasonably suppose that it was to be received as it had been interpreted in the state from which it was borrowed. There it is well settled, under their statute, that to constitute murder in the first degree the unlawful killing must be accompanied with an intent to take life. That this is the distinguishing feature between murder in the first degree and murder in the second degree—murder as it exists since the statute, and at common law; that when it appears that the killing was done with an intent to take life, and there is no circumstance of justification, excuse or extenuation recognized by law, the crime is murder in the first degree; that the intention is the essence of the crime, and that killing a person with circumstances that evidence a depravity of heart is murder in the first degree; that the intention is still the essence of the crime, and its guilt since the law, as well as before, consists in taking away the life of a human being with circumstances which show a cool depravity of heart, or a mind fully conscious of its views and designs. Whenever this is the case—whenever it appears from the whole evidence that the crime was at the moment deliberately or intentionally executed, the killing is murder in the first degree. It is sufficient to constitute this crime if the circumstances show the existence of a wicked and depraved disposition of mind, or, as it is expressed in the law, if wilfulness and deliberation are proved, though they arose and were generated at the period of the transaction. Though the act of assembly which defines the crime of murder in the first degree makes use of strong language, yet the act has received a construction contemporaneous with and as fixed as the act itself. (Commonwealth v. Green, 1 Ash. 299; Commonwealth v. Dougherty, tried in 1807, 2 Vir. Cas. 86, 87.) In Smith's trial, p. 89,

90, the court says : "Under murder in the second degree, mentioned in our act of assembly, may be included those cases of constructive murder which are often stated in the English law books, and which in that country are followed by capital punishment. A man shooting at a tame fowl with intent to steal it, kills a person : that in England is murder, punishable with death ; but in Pennsylvania would be murder in the second degree. An officer of justice or a private man is killed in endeavoring to part two persons whom he sees fighting : this in England is murder ; but in Pennsylavania it would be murder in the second degree. A person throws a large stone or a piece of timber from a house into the street, where he knows many people are passing and repassing, and kills another : this in England is murder ; but in Pennsylvania it would be murder only in the second degree. So a man in England riding in a road a dangerous horse, apt to strike, happens to kill a person : in that country it is murder ; but in Pennsylvania it is murder in the second degree." There is in the state of Virginia a statute similar to our own, defining murder in the first and second degrees. In the case of Whiteford v. The Commonwealth, 6 Rand. 724, the court, on this subject, says : " There are many instances in which the act would not be considered so wilful, deliberate and premeditated as to make it murder in the first degree, yet it would be murder at common law, and by the statute would therefore be considered as murder in the second degree. If a workman throws a stone or piece of wood from a house in a populous city into the street, where he knows people are passing and gives them no warning, and kills a man, it is murder ; yet, if it is from criminal carelessness, instead of a wilful design to kill or to do great bodily harm, it is murder in the second degree. So if a person shoots at a fowl, with the intent to steal it, and kills a person, he is guilty of murder ; but it wants the ingredient of a wilful killing, and therefore is only in the second degree." To the same effect is the opinion of Judge McGirk, in the case of Bower v. The State, 5 Mo.

State v. Phillips & Ross.

380. "There are," says the judge, "several murders at common law, which do not come under the general description of the first degree. The first case is where the unnatural mother exposed a child in an orchard, which was in consequence destroyed by a kite. The next is, where the overseers of the poor neglected and refused to furnish food for a beggar and he died. The third is where a son wantonly exposed his sick father to the weather, so that he died. At common law all these cases would be murder. In these cases there is no supposition that there was an intent to kill, yet because the consequence was death, the offenders were holden to be guilty of murder. These cases therefore, and the like, are in my opinion those which constitute murder in the second degree."

We therefore come to the conclusion that our statute concerning murder in the first and second degrees will receive the construction which accompanied it when it was adopted into our code ; that under it the distinction between murder in the first and second degree consists in the intention ; that where a homicide is shown to have been committed, and there was an intent to do the act, and there is no circumstance of excuse, justification or extenuation recognized by law, it is murder in the first degree ; that the quality of every homicide since the statute is to be determined by the rules of the common law, except so far as they are altered by the provisions concerning excusable or justifiable homicide and manslaughter, and the provision concerning murder in the second degree, which we have seen extends to those constructive murders known to the common law, where there was no intention to kill, and where the malice was implied.

It follows then that this was no case for an instruction as to the law of murder in the second degree ; for there can be no doubt, unless we stultify ourselves and refuse to permit our judgments to be influenced by considerations which govern all the rest of mankind, that Sullivan Phillips intended to kill Watson. Nor was this one of those accidental homicides which we have

seen was designed to be reached by the provision in relation to murder in the second degree. We can not conceive the ground on which the court put it to the jury as a matter of doubt that the death of Watson was intended by Sullivan Phillips. It is true the jury alone could determine the fact of intention, and it is not a matter of law that such was his intent. But in matters of this kind, the court should not by its instructions invite a doubt when nothing is so unreasonable as to suppose that any can exist.

As the case was not one for an instruction on the law concerning murder in the second degree, and as the defendants were tried for murder in the first degree, it may be thought that the defendants were not prejudiced by such instruction. This idea can not be sustained. We can not say whether the defendants should have been found guilty of murder as charged or not. The jury was improperly led away from that issue by an instruction which induced their conviction of the crime of murder in the second degree. They complain of that conviction, and have a right to have the judgment reversed if it has been obtained by undue means. But the instruction is erroneous in itself, even had the case been one for an instruction on the law of murder in the second degree. The jury were told that the defendants might be guilty of murder in the second degree without malice aforethought. Malice aforethought may be malice express or implied. So to say there may be murder without malice aforethought, is to say there may be murder without malice. Now there can be no murder in any degree without malice aforethought, express or implied. The instruction is in its terms inconsistent with itself. It directs the jury that if Sullivan Phillips *wilfully* shot and killed the deceased *without the intention* to consummate by his act the death of the deceased, &c. Now this is the same as saying, if the jury believe that S. Phillips *on purpose* killed Watson *accidentally ;* for *wilful* means *intentional, on purpose.* Moreover, if the killing was unintentional on the part of Sullivan Phillips, it is

State v. Phillips & Ross.

not easy to see how there could be aiders and abettors to it. Under the instruction as given, there was no escape from the verdict that was rendered, and as that instruction was errone - ous, the defendants were entitled to a new trial.

Judge Ryland concurring, the judgment will be reversed and the cause remanded.   Judge Leonard absent.*

* A motion for a rehearing was filed in this case by H. A. Clover, of coun- sel for the State, on behalf of the State.   A rehearing was requested upon the ground that, as the defendants could not be tried again for murder in the first degree, (they having been on the former trial found guilty of murder in the second degree, and by implication acquitted of murder in the first degree,) and as this court rules that " this was no case for an instruction as to the law of murder in the second degree," there could be no propriety in remanding the cause for further proceedings, inasmuch as there was no offence for which, under the opinion of the court, the defendants could be put upon their trial, it clearly not being a case for an instruction upon the law of manslaugh- ter in any of its degrees.   The court was requested to review that portion of its written decision which is as follows : " It follows then that this was no case for an instruction as to the law of murder in the second degree ; for there can be no doubt, unless we stultify ourselves and refuse to permit our judgments to be influenced by considerations which govern all the rest of mankind, that Sullivan Phillips intended to kill Watson.   Nor was this one of those accidental homicides which we have seen was designed to be reached by the provision in relation to murder in the second degree.   We can not con- ceive the ground on which the court put it to the jury as a matter of doubt that the death of Watson was intended by Sullivan Phillips.   It is true the jury alone could determine the fact of intention, and it is not a matter of law that such was his intent.   But in matters of this kind, the court should not by its instructions invite a doubt when nothing is so unreasonable as to suppose that any can exist."   The O'Blenis case was referred to as a case in which a conviction of murder in the second degree was had under instructions as to the law of murder in that degree, although a deliberate and intentional killing was more clearly proven in that case than in this.   The motion was overruled.