## TERRITORY *v.* FEWEL.

*(Supreme Court of New Mexico.  February 23, 1888.)*

HOMICIDE—TRIAL—INSTRUCTIONS.

Where the evidence in a murder trial shows that the defendant intended to do the killing, the question for the jury is whether the killing was justifiable or not; and it is error to charge the jury that they might find the defendant guilty of a degree of murder in which the intent to kill is entirely wanting.

Appeal from district court, Rio Arriba county.

*Wm. Breeden,* Atty. Gen., *M. A. Breeden,* Asst. Atty. Gen., and *W. B. Sloan,* for the Territory.  *N. B. Laughlin,* for defendant.

BRINKER, J.  The defendant was charged in the indictment with the crime of murder in the first degree, and upon the trial was convicted of murder in the third degree, and sentenced to imprisonment in the penitentiary for 10 years.  There was a motion for a new trial filed and overruled, and the case is brought here by appeal.

The evidence as preserved in the record discloses the following facts: About 10 or 12 days before the homicide, the deceased, Edward Norman Bacheldor, was sitting in a saloon in the town of Espanola, when the defendant came in and sat down.  Some conversation was had, when the deceased said: "Somebody swore down in court that we were notified of a certain sale."  Defendant said, "I guess I am the man that testified to that."  Deceased replied: "The man who swore it, swore a damned lie."  Then ensued a quarrel between deceased and defendant, which resulted in their going out into the street, and engaging in a fight, during the progress of which defendant threw deceased to the ground, and gave him a severe whipping.  Deceased asked the defendant to let him up, which the defendant did.  Thereupon deceased renewed the attack, and defendant fled.  Deceased pursued him, and in the pursuit secured a piece of plank, with which he endeavored to strike defendant.  Defendant escaped, however, unhurt.  From that time on, bad blood existed between the combatants and both went armed.  On the 18th day of August, 1886, about dark, deceased was in a saloon, engaged in playing a game of cards with several other persons, among whom was the proprietor of the saloon.  Defendant came into the saloon, stepped up to the bar, and, calling the proprietor, told him he wanted to pay an account which he owed.  The proprietor went behind the counter, and defendant handed him a five-dollar bill.  The proprietor took the bill and laid the change in coin upon the counter.  Defendant took the money from the counter, and at that moment deceased, who had arisen from the card-table, approached defendant, and said, "We will settle that thing now," or something to that effect, and at once struck the defendant on the head,—whether with his fist or open hand does not clearly appear, as the witnesses differ on this point.  The force of the blow was such as to stagger defendant, and throw him towards the door, or he retreated to the door, and, some of the witnesses say, out of the room.  Defendant, immediately after getting to the door, or, as some say, outside the door, fired in rapid succession two shots at deceased, both of which took effect, and one of them causing his death in a very short time.  After the shooting defendant left, and went to the rear of a boarding-house in the vicinity, where he was found shortly afterwards by the keeper of the house, who told him to go to his room and stay there until the authorities should arrest him.  This he did.  There was evidence of threats made by deceased against defendant at the time of the first difficulty, and by defendant against deceased afterwards and before the shooting.  When deceased was taken up from where he had fallen a large revolver was found upon his person.

Among other instructions given upon the trial was the following: "The court further instructs the jury that if they believe from the evidence that the

defendant is not guilty of murder in the first or second degree, but find that defendant killed Bacheldor in a heat of passion from a provocation given at the time of the killing, which was not justifiable or excusable, and not from a premeditated design to effect death, they might then decide from the evidence whether the defendant was guilty of murder in the third degree; and if the jury should find that he was guilty of murder in the third degree, they will assess his punishment at imprisonment in the territorial penitentiary for a period not less than three years nor more than ten years. On this you will decide from the evidence." To the giving of this instruction defendant at the time excepted, and made it one of the grounds of his motion for new trial, and now insists that it constituted error sufficient to justify a reversal of the judgment. There are many exceptions in the record based upon alleged errors occurring during the trial; but as a determination of this one must result in sending the cause back for a new trial, I have deemed it unnecessary to discuss the others.

The statute defining murder in the third degree is as follows: "The killing of a human being without design to effect death, in heat of passion, but in a cruel and unusual manner, unless it be committed under such circumstances as to constitute justifiable or excusable homicide, shall be deemed murder in the third degree." Section 699, Comp. Laws 1884. The punishment prescribed is imprisonment not less than three nor more than ten years. Section 703, Id. This statute is almost a *verbatim* copy of the Missouri statute defining manslaughter in the third degree, and was evidently taken from that state. The only difference is that in Missouri the words "cruel" and "unusual manner" are joined with a disjunctive "or," while in section 699, *supra*, they are connected with the conjunctive "and," and the offense is called in the former, "manslaughter in the second degree," and in the latter, "murder in the third degree." Rev. St. Mo. 1845, p. 345, § 11; Wag. St. Mo. 1872, p. 447, § 11. The essential elements of the offense are the same in both statutes, except that in Missouri, it seems, an unintentional killing in heat of passion would be manslaughter, if committed in either a cruel or unusual manner, while here it must be done in both a cruel and unusual manner. Is there anything in the evidence which would justify the giving of the instruction complained of? Bishop, in his work on Criminal Procedure, thus states the rule: "The charge should state the law in its application to the facts. * * * If, for example, there are different degrees of an offense, the law of each degree which the evidence tends to prove should be given, but not of any degree which it does not tend to prove." Section 980.

In the case of *State* v. *Alexander*, 66 Mo. 148, the court, in discussing the action of the trial court, in giving an instruction based upon section 11 of the statute of the state, above cited, says: "In the sixteenth instruction the court declared that if defendant, without a design to effect death in a heat of passion, did kill Norrick in a cruel and unusual manner by shooting him with a shotgun, they should find him guilty of manslaughter in the second degree. Frank Crook, a witness for the state, testified that defendant shot twice with a double-barreled shotgun; that defendant raised his gun and shot, and that deceased was about two feet from Alexander, (defendant.) Eldridge Kyler, for the state, testified that defendant raised up his gun, deliberately took aim, and fired. On that point there was no contradictory evidence. In his written opinion, on the application of defendant to be admitted to bail, the judge who tried the cause correctly stated the law as follows: A man is taken to intend that which he does, or which is the immediate or necessary consequence of his act. To illustrate, if a man within shooting distance of another raises his gun, takes aim, and fires, and the ball inflicts a mortal wound, from which death ensues, the fair presumption is that he intended to kill his victim, and, if so, the act is certainly murder, unless done in self-defense. The case sup-

posed by him to illustrate the principle is the very case here, and it is a little remarkable that the court, having so clear a view of the law, should have given the sixteenth instruction. That the defendant intended to kill Norrick is beyond a doubt. In the case of the *State* v. *Phillips*, 24 Mo. 475, SCOTT, J., delivering the opinion of the court, said: 'It follows, then, that this was no case for an instruction as to the law of manslaughter in the second degree; for there can be no doubt, unless we stultify ourselves and refuse to permit our judgment to be influenced by considerations which govern all the rest of mankind, that Sullivan Phillips intended to kill Watson.' Those remarks are equally applicable to this case, and it was error to give the sixteenth instruction. And here it may be observed that defendant was found guilty of manslaughter in the second degree, the very degree in regard to which the improper instruction was given; of which crime there was not a particle of evidence to warrant his conviction. He was either guilty of murder in one of the degrees of which an intention to kill is an element, or the killing was justifiable." This court said in effect that, where an offense consisted of different degrees, to instruct upon a degree of the offense not shown by the evidence to have been committed was error.

PRINCE, C. J., says: "In a case of murder by an ordinary pistol shot, to include in the charge the sections as to the killing in a cruel and unusual manner would simply confuse and mislead." *Territory* v. *Young*, 2 N. M. 105. This, it is true, was said by way of argument and illustration, but it nevertheless states the law in harmony with the rule quoted from Bishop, *supra*.

In *Territory* v. *Pridemore*, 13 Pac. Rep. 96,[1] HENDERSON, J., in delivering the opinion of this court, after stating the elements of murder in the second degree, said: "In the third, however, we think there must have been both the absence of the intention to kill and the presence of the motive to inflict bodily or mental suffering from the effect of which the injured person died. Again, killing a human being by means of a shot or shots from a Colt's revolver is not, as the history of criminal trials shows, an unusual manner of effecting death."

The facts in *Alexander's Case* were very similar to those in this case. In *Young's Case* the facts are not stated. In *Pridemore's Case* the facts show that deceased was killed by a pistol-shot fired by one of two persons engaged in shooting at each other, but with whose quarrel deceased had nothing to do. In all of these the principle is clearly recognized that it takes something more than a killing with a pistol-shot fired during a difficulty to authorize the court to charge the jury as to murder in the third degree.

The evidence shows that deceased assaulted defendant, who then and there, or in so short a time afterwards as to be almost inappreciable, drew his pistol, and fired two shots at deceased, killing him almost instantly. There was certainly nothing cruel in this within the meaning of the statute, unless all killings may be considered cruel; and there was nothing unusual in it, as Judge HENDERSON, says, "as the history of criminal trials shows." That the legislature recognized the fact that there might be killings which are not to be deemed cruel, as contemplated by this section, is shown by reference to the other sections of the statute.

The definition of the words "cruel and unusual," quoted from *Pridemore's Case*, is certainly clear and satisfactory, and I adopt it here. That defendant intended to kill the deceased is shown beyond any question by the circumstances attending the homicide, and there is no pretense on the trial to the contrary. Then where do we find a basis for the assumption that defendant acted "without design to effect death?" Heat of passion was present, and the killing of a human being; but these were the sole ingredients of murder in the third degree developed on the trial. A glance at the statute will show how far they fall short of its requirements. The defendant was convicted of the very degree to sustain which there was not a particle of evidence. As said

[1] Same case, *ante*, 137.

by Judge HENRY in *Alexander's Case, supra:* "He was either guilty of murder in one of the degrees of which an intention to kill is an element, or the killing was justifiable,"—and the attention of the jury should have been confined to that issue.

The attorney general contends that even if this instruction be held erroneous, it was an error committed in defendant's favor, and he cannot complain. This may or may not be true. If it could be said from a consideration of the whole case, and in any view of it, that the defendant would have been convicted of a higher degree if this instruction had not been given, then the position might be sound. But if, from a fair and impartial examination of the evidence, the jury might have returned a verdict of not guilty, had their attention been confined by the instructions to an intentional killing constituting crime, or an intentional killing justified by law, then the defendant was prejudiced by the failure of the court to confine the attention of the jury to this issue. From a careful consideration of this evidence, in view of the rule that the jury is the sole judge of its weight, and the credibility of the witnesses from whom it is elicited, it cannot be said that the jury was bound to find defendant guilty of an intentional killing without lawful excuse. This being true, an instruction which leads them away from the real issue is erroneous. The instruction complained of was calculated to, and as shown by the verdict did, lead the jury to a conclusion wholly unsupported by the evidence, and was, therefore, improperly given. This error was prejudicial to the defendant, as we have seen, for it deprived him of the reasonable hope of a possible acquittal if the mind of the jury had been confined to the legal effect of the facts proved. *State* v. *Phillips,* 24 Mo. 475; *State* v. *Alexander, supra; State* v. *Sloan,* 47 Mo. 604.

From these considerations it is clear that the judgment should be reversed, and the cause remanded, with directions to award a new trial.

LONG, C. J., and HENDERSON, J., concur.

REEVES, J.   I concur in granting the new trial.