[No. 352.    February 23, 1888.]

## TERRITORY v. FEWEL.

CRIMINAL LAW—HOMICIDE—MURDER—INSTRUCTIONS—SECTION 699, COM-
PILED LAWS, 1884—CONSTRUCTION OF STATUTES.—On a trial on indict-
ment for murder in the first degree, where the defendant was con-
victed of murder in the third degree, under section 699, Compiled
Laws, 1884, and the evidence was that deceased violently assaulted
defendant, who then and there drew his pistol and fired two shots at
deceased, killing him instantly, such killing was not cruel within the
meaning of the statutes, nor unusual as held by this court in Territory
v. Pridemore. The question for the jury was not whether defendant
intended to kill deceased, such intent might be inferred from the cir-
cumstances attending the homicide, but whether or not there was
lawful excuse for the killing; and it was error in the court to lead the
jury away from the issue, and instruct them to, convict defendant of
murder in the third degree, when there was no evidence to sustain it.
Such instruction was prejudicial to defendant, in depriving him of
the reasonable hope of acquittal had the mind of the jury been con-
fined to the legal effect of the facts proved.

APPEAL from a judgment of the First Judicial
District Court, Rio Arriba County, convicting defend-
ant of murder in the third degree, and sentencing him
to imprisonment in the penitentiary for ten years.
Judgment reversed and new trial ordered.

The facts are stated in the opinion of the court.

N. B. LAUGHLIN for appellant.

The charge in the indictment that the "full given
name is to the grand jurors unknown," meaning the
full given name of the appellant, is a material aver-
ment, and should have been proved.    Bishop, Direc-
tions and Forms, sec. 77; 1 Bish. Crim. Proc., secs.
459, 495, 552, 676, 678, 680; Blodgett v. State, 3 Ind.
403; Stone v. State, 30 id. 115; 65 id. 213; Reed v.

State, 16 Ark. 499; State v. Wilson, 30 Conn. 500; Comp. Laws, 1884, sec. 2484.

The court erred in excluding the testimony of the witness, Frank Kalalia, as to threats made by the deceased·against appellant on the twelfth or thirteenth day of July, prior to the fatal difficulty on the eighteenth of the succeeding month; it was a part of the res gestae, and should have been admitted.   2 Bish. Crim. Proc., sec. 232; Sloan's case, 1 Horr. & Thomp. 528; Stokes' case, id. 928; Pridgen's case, id. 421.  It tended to characterize in the mind of the accused the assault first made by the deceased on the fatal occasion. Wiggins' case, 93 U. S. 465-467.

The court erred in excluding the evidence of Jack Barringer, given at a prior examination of the same facts in the case before Judge Long, as a committing magistrate.   1 Bish. Crim. Proc., sec. 1195;  State v. Harman, 27 Mo. 120, Vide. Trans. of Record, pp. 110-121.

The court erred in giving instruction number 7. The first paragraph of the instruction is misleading as to the degree attempted to be charged.   The second paragraph is not a correct statement of the law applicable to the evidence given in the case.   Comp. Laws, 1884, sec. 688; 2 Bish. Crim. Proc., secs. 602, 604, 606; Sloan's case, 1 Horr. & Thomp. 519;  Stokes' case, id. 928, 935.

The court erred in not fully and clearly instructing the jury as to a reasonable doubt in favor of appellant.   1 Bish. Crim. Proc., sec. 980; Lopez's case, 2 Pac. Rep. 368.

The court erred in charging the jury as to murder in the third degree, in admitting the words "but in a cruel and unusual manner."   When a court charges in any degree the jury should be instructed fully as to the law applicable to that degree.   Comp. Laws, 1884, sec.

699; Lopez's case, 2 Pac. Rep. 368; Nicholls' case, id. 81; Perea's case, 1 N. M. 627; 1 Bish. Crim. Proc. 980.

The court erred in instructing the jury on the law of murder in the fourth degree. If the appellant was guilty in any degree the evidence is applicable to the fourth degree, and the court should have charged in that degree. Comp. Laws, 1884, sec. 700; Nicholls' case, 2 Pac. Rep. 81.

The following propositions are submitted on the evidence: First. That appellant had reasonable ground to apprehend a design on the part of deceased to do him some great personal injury, and that there was imminent danger of such design being accomplished. Second. The homicide was justifiable. Third. The evidence shows that appellant acted in self-defense. Comp. Laws, 1884, second clause, sec. 692; Selfridge's case, 1 Horr & Thomp. 13; Pridgen's case, id. (31 Tex. 420) 420, 424; Sloan's case, id. (47 Mo. 604) 519; Bohannon's case, id. (8 Bush. Ky. 481) 399; Keen's case, id. note (30 Mo. 357) 531; Tweedy's case, id. (5 Iowa, 433) 906; Stokes' case, id. (53 N. Y.) 928, 935; Phillips' case, id. (2 Duvall, 328) 386, 387.

WILLIAM BREEDEN, attorney general, and W. B. SLOAN, special counsel, for the territory.

The defendant can not except or assign for error in this court any exception not made in the court below. Territory v. O'Donnell, 12 Pac. Rep. 748; Kennedy v. People, 40 Ill. 488; Sedgwick v. Phillips, 22 id. 184; Leigh v. Hedges, 3 Scam. 15; Hill v. Ward, 2 Gilman, 285; State v. Miller, 23 Minn. 352; Comm. v. Child, 10 Pick. 252; State v. Haskell, 6 N. Clents, 65 Ind. 12; Griffin v. Pate, 63 id. 273; Wood v. Weimer, 104 U. S. 786.

The first exception in appellant's brief comes within the first proposition above stated. Territory v. O'Donnell, 12 Pac. Rep. 748.

The first assignment of error of appellant is "that the indictment does not disclose the Christian name of the defendant." It was not claimed in the court below, and comes too late in this court. If defendant once pleads the general issue of "not guilty," he is thereby precluded from taking advantage of error in his name. 2 Whar. on Homicide, p. 786, and cases cited.

There was not the slightest evidence of murder in any degree other than the first, and if the court instructed the jury to defendant's advantage he ought not to complain. Territory v. Salazar, 5 Pac. Rep. 462. See, also, 2 Pac. Rep. 82; 1 Bish. Crim. Proc., sec. 980; People v. Ah Kong, 49 Cal. 6; State v. Murray, 5 Pac. Rep. 55.

BRINKER, J.—The defendant was charged in the indictment with the crime of murder in the first degree, and upon the trial was convicted of murder in the third degree, and sentenced to imprisonment in the penitentiary for ten years. There was a motion for a new trial filed and overruled, and the case was brought here by appeal.

The evidence, as preserved in the record, discloses the following facts: About ten or twelve days before the homicide, the deceased, Edward Norman Bacheldor, was sitting in a saloon in the town of Espanola, when the defendant came in and sat down. Some conversation was had, when the deceased said: "Somebody swore down in court that we were notified of a certain sale." Defendant said: "I guess I am the man who testified to that." Deceased replied: "The man who swore it, swore a damned lie." Then ensued a quarrel between deceased and defendant, which resulted in their going out into the street, and engaging in a fight, during the progress of which defendant threw deceased to the ground and gave him a severe whipping. Deceased asked defendant to let

him up, which the defendant did. Thereupon deceased
renewed the attack, and defendant fled.   Deceased
pursued him, and in the pursuit secured a piece of
plank, with which he endeavored to strike defendant.
Defendant escaped, however, unhurt.   From that time
on, bad blood existed between the combatants and
both went armed.   On the eighteenth day of August,
1886, about dark, deceased was in a saloon, engaged
in playing a game of cards with several other persons,
among whom was the proprietor of the saloon.   Defend-
ant came into the saloon, stepped up to the bar, and
calling the proprietor told him he wanted to pay an
account which he owed.   The proprietor went behind
the counter, and defendant handed him a $5 bill.   The
proprietor took the bill and laid the change in coin
upon the counter, and at that moment deceased, who
had arisen from the card table, approached defendant,
and said, "We will settle that thing now," or some-
thing to that effect, and at once struck the defendant on
the head, whether with his fist or open hand does not
clearly appear, as the witnesses differ on this point.
The force of the blow was such as to stagger defendant,
and throw him towards the door, or he retreated to the
door, and, some of the witnesses say, out of the room.
Defendant, immediately after getting to the door, or,
as some say, outside the door, fired in rapid succession
two shots at deceased, both of which took effect, and
one of them causing his death in a very short time.
After the shooting defendant left and went to the rear
of a boarding house in the vicinity, where he was
found shortly afterward by the keeper of the house,
who told him to go to his room and stay there until
the authorities should arrest him.   This he did.   There
was evidence of threats made by deceased against
defendant at the time of the first difficulty, and by
defendant against the deceased afterward and before the
shooting.   When deceased was taken up from where

he had fallen a large revolver was found on his person.
Among other instructions given upon the trial was the
following:    "The court further instructs the jury that
if they believe from the evidence that the defendant is
not guilty of murder in the first or second degree, but
find that defendant killed Bacheldor in a heat of pas-
sion from a provocation given at the time of the kill-
ing, which was not justifiable or excusable, and not
from a premeditated design to effect death, they might
then decide from the evidence whether the defendant
was guilty of murder in the third degree; and if the
jury should find that he was guilty of murder in the
third degree, they will assess his punishment at impris-
onment in the territorial penitentiary for a period not
less than three years nor more than ten years.    On
this you will decide from the evidence."    To the giv-
ing of this instruction defendant at the time excepted,
and made it one of the grounds of his motion for new
trial, and now insists that it constituted error sufficient
to justify a reversal of the judgment.    There are many
exceptions in the record based upon alleged errors
occurring during the trial; but as a determination of
this one must result in sending the cause back·tor a
new trial, I have deemed it unnecessary to discuss the
others.

The statute defining murder in the third degree is
as follows:    "The killing of a human being without
design to effect death, in heat of passion, but in a cruel
and unusual manner, unless it be committed under
such circumstances as to constitute justifiable or excus-
able homicide, shall be deemed murder in the third
degree."    Section 699, Comp. Laws, 1884.    The pun-
ishment prescribed is imprisonment not less than three
nor more than ten years.    Section 703, id.    This stat-
ute is almost a verbatim copy of the Missouri statute
defining manslaughter in the second degree, and was
evidently taken from that state.    The only difference

in the two statutes is that in Missouri the words "cruel" and "unusual manner" are joined with a disjunctive "or," while in section 699, supra, they are connected with the conjunctive "and," and the offense is called in the former "manslaughter in the second degree," and in the latter "murder in the third degree." R. S. Mo. 1845, p. 345, sec. 11; Wag. St. Mo. 1870, p. 447, sec. 11. The essential elements of the offense are the same in both statutes, except that in Missouri, it seems, an unintentional killing in heat of passion would be manslaughter, if committed in either a cruel or unusual manner, while here it must be done in both a cruel and unusual manner. Is there anything in the evidence that would justify the giving of the instruction complained of? Bishop, in his work on criminal procedure, thus states the rule: "The charge should state the law in its application to the facts. * * * If, for example, there are different degrees of an offense, the law of each degree which the evidence tends to prove should be given, but not of any degree which it does not tend to prove." Section 980.

In the case of State v. Alexander, 66 Mo. 148, the court, in discussing the action of the trial court in giving an instruction based upon section 11 of the statute of the state, above cited, say: "In the sixteenth instruction the court declared that if defendant, without a design to effect death in a heat of passion, did kill Norrick in a cruel and unusual manner by shooting him with a shotgun, they should find him guilty of manslaughter in the second degree. Frank Cook, a witness for the state, testified that defendant shot twice with a double-barreled shotgun; that defendant raised his gun and shot, and that deceased was about two feet from Alexander (defendant). Eldridge Kyler, for the state, testified that defendant raised up his gun, deliberately took aim, and fired. On that point there was no contradictory evidence. In his written opinion, on

the application of defendant to be admitted to bail, the judge who tried the cause correctly stated the law as follows: A man is taken to intend that which he does, or which is the immediate or necessary consequence of his act. To illustrate, if a man within shooting distance of another raises his gun, takes aim, and fires, and the ball inflicts a mortal wound, from which death ensues, the fair presumption is that he intended to kill his victim, and, if so, the act is certainly murder, unless done in self-defense. The case supposed by him to illustrate the principle is the very case here, and it is a little remarkable that the court, having so clear a view of the law, should have given the sixteenth instruction. That the defendant intended to kill Norrick is beyond a doubt. In the case of the State v. Phillips, 24 Mo. 475, SCOTT, J., delivering the opinion of the court, said: 'It follows, then, that this was no case for an instruction as to the law of manslaughter in the second degree; for there can be no doubt, unless we stultify ourselves and refuse to permit our judgment to be influenced by considerations which govern all the rest of mankind, that Sullivan Phillips intended to kill Watson.' Those remarks are equally applicable to this case, and it was error to give the sixteenth instruction. And here it may be observed that defendant was found guilty of manslaughter in the second degree, the very degree in regard to which the improper instruction was given; of which crime there was not a particle of evidence to warrant his conviction. He was either guilty of murder in one of the degrees of which an intention to kill is an element, or the killing was justifiable.'' This court said in effect that, where an offense consisted of different degrees, to instruct upon a degree of the offense not shown by the evidence to have been committed was error.

PRINCE, C. J., says: ''In a case of murder by an ordinary pistol shot, to include in the charge the sections

as to the killing in a cruel and unusual manner would simply confuse and mislead." Territory v. Young, 2 N. M. 105. This, it is true, was said by way of argument and illustration, but it nevertheless states the law in harmony with the rule quoted from Bishop, supra.

In Territory v. Pridemore, 13 Pac. Rep. 96, HENDERSON, J., in delivering the opinion of this court, after stating the elements of murder in the second degree, said: "In the third, however, we think there must have been both the absence of the intention to kill and the presence of the motive to inflict bodily or mental suffering from the effect of which the injured person died. Again, killing a human being by means of a shot or shots from a Colt's revolver is not, as the history of criminal trials shows, an unusual manner of effecting death."

The facts in Alexander's case were very similar to those in this case. In Young's case the facts are not stated. In Pridemore's case the facts show that deceased was killed by a pistol shot fired by one of two persons engaged in shooting at each other, but with whose quarrel deceased had nothing to do. In all of these the principle is clearly recognized that it takes something more than a killing with a pistol shot fired during a difficulty to authorize the court to charge the jury as to murder in the third degree.

The evidence shows that deceased assaulted defendant, and that defendant then and there, or in so short a time afterwards as to be almost inappreciable, drew his pistol, and fired two shots at deceased, killing him almost instantly. There was certainly nothing cruel in this within the meaning of the statute, unless all killings may be considered cruel, and there was nothing unusual in it, as Judge HENDERSON says, "as the history of criminal trials shows." That the legislature recognized the fact that there might be killings which are not to be deemed cruel, as contemplated by this

section, is shown by reference to the other sections of the statute.

The definition of the words "cruel and unusual," quoted from Pridemore's case, is certainly clear and satisfactory, and I adopt it here. That defendant intended to kill the deceased is shown beyond any question by the circumstances attending the homicide, and there is no pretense on the trial to the contrary. Then where do we find a basis for the assumption that defendant acted "without design to effect death?" Heat of passion was present, and the killing of a human being; but these were the sole ingredients of murder in the third degree developed on the trial. A glance at the statute will show how far they fall short of its requirements. The defendant was convicted of the very degree to sustain which there was not a particle of evidence. As said by Judge HENRY in Alexander's case, supra: "He was either guilty of murder in one of the degrees of which an intention to kill is an element, or the killing was justifiable,"—and the attention of the jury should have been confined to that issue.

The attorney general contends that even if this instruction be held erroneous it was an error committed in defendant's favor, and he can not complain. This may or may not be true. If it could be said from a consideration of the whole case, and in any view of it, that the defendant would have been convicted of a higher degree if this instruction had not been given, then the position might be sound. But if, from a fair and impartial examination of the evidence, the jury might have returned a verdict of not guilty, had their attention been confined by the instructions to an intentional killing constituting crime, or an intentional killing justified by law, then the defendant was prejudiced by the failure of the court to confine the attention of the jury to this issue. From a careful

consideration of this evidence, in view of the rule that the jury is the sole judge of its weight, and the credibility of the witnesses from whom it is elicited, it can not be said that the jury was bound to find defendant guilty of an intentional killing without lawful excuse. This being true, an instruction which leads them away from the real issue is erroneous. The instruction complained of was calculated to, and, as shown by the verdict, did, lead the jury to a conclusion wholly unsupported by the evidence, and was, therefore, improperly given. This error was prejudicial to the defendant, as we have seen, for it deprived him of the reasonable hope of a possible acquittal if the mind of the jury had been confined to the legal effect of the facts proved. State v. Phillips, 24 Mo. 475; State v. Alexander, supra; State v. Sloan, 47 Mo. 604.

From these considerations it is clear that the judgment should be reversed, and the cause remanded, with directions to award a new trial, and it is so ordered.

LONG, C. J., and HENDERSON, J., concur.

REEVES, J.—I concur in granting the new trial.